**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| BROADWAY FORD TRUCK SALES, INC., ) ) ) Plaintiff, ) ) v. ) ) DEPOSITORS INS. CO., ) ) Defendant. ) | Case No. 4:20-CV-00999-JAR |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Depositors Insurance Co.'s ("Depositors") Motion for Partial Summary Judgment. (Doc. 26). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be granted in part and denied in part.

**I.     BACKGROUND**

Depositors issued Plaintiff Broadway Ford Truck Sales, Inc. ("Broadway Ford") a Commercial Property Policy effective August 1, 2017 (the "Policy"). (Doc. 28-1; Doc. 46 at ¶ 1). On September 2, 2017, a fire caused substantial damage to Broadway Ford's business premises. (Doc. 46 at ¶ 2). After Broadway Ford made a claim under the Policy, the parties achieved a partial compromise and accordingly executed a Limited Settlement Agreement and Release of Disputed Property Claims on March 29, 2019 (the "Settlement Agreement"). (*Id.* at ¶ 4; Doc. 31-1). The Settlement Agreement released Broadway Ford's claims for Building and Business Personal Property coverage but explicitly notes that "claims for Business Income and Extra Expense [ ] are not included or made a part of this [Settlement] Agreement and remain open." (Doc. 31-1 at § 2).

On July 30, 2020, Broadway Ford filed a two-count complaint in this Court. (Doc. 1). In Count I, Broadway Ford alleges that Depositors breached its contractual obligations by failing to

1

timely assess the damages recoverable under the Policy, causing Broadway Ford to incur additional lost Business Income and Extra Expense. (*Id.* at ¶¶ 15-23). In Count II, Broadway Ford seeks damages for vexatious refusal pursuant to Mo. Rev. Stat. § 375.296 on the grounds that Depositors "refused and failed to pay the subject claim without conducting a reasonable and adequate investigation." (*Id.* at ¶ 27). Depositors seeks summary judgment as to Count II, arguing that the Settlement Agreement operates as a release of the vexatious refusal claim. (Doc. 27 at 3).[1]

## II.   LEGAL STANDARD

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if they can "show[] that there is no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Meier v. City of St. Louis*, 934 F.3d 824, 827-278 (8th Cir. 2019). In determining whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 619 (8th Cir. 1988). The nonmovant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.   ANALYSIS

### A.   Interpreting the Settlement Agreement

Under Missouri law, the "interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement, and the primary rule of

---

[1] On May 24, 2021, this Court denied Broadway Ford's Motion for Extension of Time to Respond to the motion for partial summary judgment, explaining that "[e]verything essential to disposition of the pending motion for partial summary judgment exists within the four corners of the Settlement Agreement." (Doc. 43 at 4).

construction is that the intention of the parties shall govern." *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993) (citations omitted); *see also Smith v. Keystone Mut. Ins. Co.*, 579 S.W.3d 275, 280 (Mo. Ct. App. 2019).[2] Plain language "forecloses speculation about intent of the parties." *Holmes v. Multimedia KSDK, Inc.*, 395 S.W.3d 557, 560 (Mo. Ct. App. 2013) (citation omitted). Alternatively, a release or settlement agreement may be ambiguous, meaning "its terms are susceptible to more than one meaning so that reasonable [persons] may fairly and honestly differ in their construction of the terms." *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001) (citation omitted). When a release is ambiguous, parol evidence becomes admissible and "resolution of the ambiguity is a question of fact for the jury." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 67 (8th Cir. 1994).

In determining whether the Settlement Agreement is ambiguous, this Court considers "the whole instrument and the natural and ordinary meaning of the language." *Press Mach. Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir. 1984); *see also Purcell Tire & Rubber Co., Inc. v. Executive Beechcraft, Inc.*, 59 S.W.3d 505, 510 (Mo. banc 2001) (noting that whether contract is ambiguous depends on context). Whether a release is ambiguous is a question of law, and summary judgment is only appropriate when the release is unambiguous on its face. *Anderson v. Curators of Univ. of Missouri*, 103 S.W.3d 394, 399 (Mo. Ct. App. 2003) (citations omitted).

Each party argues that the Settlement Agreement's plain language unambiguously supports their position. According to Depositors, the Settlement Agreement explicitly carves out all potential claims except those for Business Income and Extra Expense. Broadway Ford responds that the Settlement Agreement only releases claims concerning Building and Business Personal

---

[2] This Court applies the law of the forum state in this diversity action. The Settlement Agreement explicitly provides that it "shall be construed and interpreted according to [Missouri's] laws." (Doc. 31-1 at § 13). *See H&R Block Tax Servs., LLC v. Franklin*, 691 F.3d 941, 943 (8th Cir. 2012) (internal quotation omitted) ("Under Missouri law, a choice-of-law clause in a contract is generally enforceable unless application of the agreed-to law is contrary to a fundamental policy of Missouri.").

3

Property coverage and makes no mention of vexatious refusal. Broadway Ford alternatively argues that this Court should deny summary judgment because there is ambiguity as to whether the Settlement Agreement releases any vexatious refusal claim.

The Settlement Agreement begins with recitals identifying three categories of damages claimed by Broadway Ford under the Policy: (1) Building; (2) Business Personal Property; (3) Business Income and Extra Expense.[3] (Doc. 31-1 at 1). The recitals further state that Broadway Ford and Depositors "now desire to compromise and resolve their disputes in connection with [Broadway Ford's] claims for damage to [its] building and business personal property" but that the "claims for Business Income and Extra Expense . . . will remain open and will not be included in this [Settlement] Agreement." (*Id.*). The recitals clearly set out that the purpose of the Settlement Agreement is to settle Broadway Ford's Building and Business Personal Property claims. This Court recognizes that recitals "are not strictly part of the contract because they do not impose contractual duties on the parties," but notes that the Settlement Agreement later references the recitals (Doc. 31-1 at § 3) as accurately describing the disputed matter. *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 625 (Mo. Ct. App. 2014) (citation omitted).

While various sections of the Settlement Agreement discuss its overall purpose, Section 2 ("Insured's Release & Indemnification") identifies the particular claims released by Broadway Ford. This section is critical to resolution of the instant motion because it specifically describes the released claims. Focusing on the language in this section is consistent with Missouri law, which provides that "[w]hen faced with conflicting or ambiguous specific and general provisions in a contract, a court should enforce the more specific of the terms." *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 816 (8th Cir. 2010) (citation omitted); *see also FiveStar Quality Care-MO, L.L.C. v.*

---

[3] The Court recognizes that these are technically two separate claims under the Policy. (Doc. 1 at ¶¶ 12-13).

4

*Lawson*, 283 S.W.3d 811, 815 (Mo. Ct. App. 2009) ("When a provision of a contract deals with a specific situation, it will prevail over a more general provision if there is ambiguity or inconsistency between them."). At the same time, this Court does not interpret the section in a vacuum, but instead in the context of the entire release. *See Yerington v. La-Z Boy, Inc.*, 124 S.W.3d 517, 520 (Mo. Ct. App. 2004) (citation omitted). The release portion of Section 2 states:

> [Broadway Ford] releases and forever discharges [Depositors], including but not limited to its past, present and future officers, directors, employees, attorneys, agents, parent, sister, or subsidiary corporations, successors, affiliates and assigns from any and all claims, demands[,] obligations, or causes of action of any nature whatsoever, whether based on contract indemnity, breach of contract, tort (including breach of the implied covenant of good faith and fair dealing), bad faith, any other theory of recovery and whether for compensatory or punitive damages, for damages to [Broadway Ford's] building and business personal property under the Building and Business Personal Property Coverage under the Policy arising out of [Broadway Ford's] property damages claims and the losses as a result of the [fire] and related thereto or any obligations of the Parties – with the exception of [Broadway Ford's] claims for Business Income and Extra Expense which are not included or made part of this [Settlement] Agreement and remain open. (Doc. 31-1 at § 2).

This language is clear, unambiguous, and consistent with the entire Settlement Agreement: Broadway Ford released "any and all claims . . . of any nature whatsoever" under the Building and Business Personal Property coverage while the "Business Income and Extra Expense [ ] are not included or made part of" the Settlement Agreement and "remain open." (*Id.*). These were two commercial entities seeking to resolve certain disputed claims (Building and Business Personal Property) while carefully stating that the Business Income and Extra Expense issues had not been settled. *See Purcell Tire & Rubber Co.*, 59 S.W.3d at 510 ("Language that is ambiguous to an unsophisticated party may not be ambiguous to a sophisticated commercial entity."). Reasonable people could not "fairly and honestly differ in the reading" of these terms. *Bydalek v. Brines*, 29 S.W.3d 848, 854 (Mo. Ct. App. 2000) (citation omitted). Accordingly, it is this Court's role to

5

determine as a matter of law whether the unambiguous release requires summary judgment in favor of Depositors as to Count II of Broadway Ford's complaint.

### B. Applying the Settlement Agreement to Broadway Ford's Vexatious Refusal Claims

In Count II, Broadway Ford seeks damages for vexatious refusal pursuant to MO. REV. STAT. § 375.296. A claim of vexatious refusal to pay under Missouri law "requires proof (1) of an insurance policy, (2) of the insurer's refusal to pay, and (3) that the insurer's refusal was without reasonable cause or excuse." *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 907 (Mo. banc 2010) (citation omitted). If the insured can make such a showing, Missouri law permits the court or jury to award additional damages and attorneys' fees. *See* MO. REV. STAT. § 375.420.

In Count II of its complaint, Broadway Ford broadly alleges that Depositors' "refusal and failure to make prompt and timely payment of the loss was without reasonable cause or excuse." (Doc. 1 at ¶ 29). It is not exactly clear, however, which "loss" Broadway Ford refers to in this allegation. As discussed above, the Settlement Agreement identifies three categories of damages, the first two of which were resolved: (1) Building; (2) Business Personal Property; (3) Business Income and Extra Expense. (Doc. 31-1 at 1). In its memorandum in response to the instant motion, Broadway Ford initially states that "the claim for vexatious refusal arises from [Depositors'] untimely handling of the property damage building claim which Broadway Ford contends resulted in the additional damages for business income and extra expense." (Doc. 48 at 4). Subsequently, and in apparent contradiction, Broadway Ford indicates that the "claim for vexatious refusal arises out of Broadway Ford's claims for business income and extra expense which remain open." (*Id.* at 10).

6

Though the complaint is not a model of clarity, this Court interprets it as making vexatious refusal claims as to each of the three categories under the Policy. Vexatious refusal is typically alleged following denial or delay by the insurer for claims on an entire insurance policy. But in these unique circumstances, particularly considering the nature of the Settlement Agreement, it is appropriate to divide Count II into separate claims for vexatious refusal. Accordingly, the Court will determine whether the Settlement Agreement released Broadway Ford's vexatious refusal claim as to each category.

*Vexatious Refusal – Building and Business Personal Property*

This Court will grant summary judgment in favor of Depositors on Count II of the complaint to the extent Broadway Ford seeks damages for vexatious refusal as to the Building and Business Personal Property claims. The Settlement Agreement unambiguously operates as a release of "any and all claims . . . or causes of action of any nature whatsoever . . . for damage to [Broadway Ford's] building and business personal property." (Doc. 31-1 at § 2). This broad language unquestionably encompasses Broadway Ford's vexatious refusal claim, and such interpretation is consistent with the full context of the Settlement Agreement. *See Andes*, 853 S.W.3d at 941 ("[L]anguage that is plain and unambiguous on its face will be given full effect within the context of the agreement as a whole.").

Broadway Ford unpersuasively argues that if Depositors intended that the Settlement Agreement "extended to claims for vexatious delay, it should have specifically stated that within the [ ] Settlement Agreement." (Doc. 48 at 5). Given the general release of all "causes of action of any nature whatsoever," Depositors did not have to specifically identify release of a potential vexatious refusal claim. Courts applying Missouri law have consistently held that parties are not required to identify particular claims in releases when they include language stating that "any and

7

all" claims are being released, as the Settlement Agreement does here. *See Andes* 853 S.W.2d at 941 ("There is no ambiguity, however, in the clause 'any claims, known and unknown.' These words are unqualified and unrestricted."); *Lunceford v. Houghtlin*, 170 S.W.3d 453, 460 (Mo. Ct. App. 2005) ("If a release states that it releases 'all claims' against 'any and all persons,' or similar language, it may operate as a general release."); *State ex rel. Stutz v. Campbell*, 602 S.W.2d 874, 876 (Mo. Ct. App. 1980) ("If the plain language of the release declares that there is a release from any and all actions or suits of any kind or nature whatsoever resulting from a particular accident, that language forecloses any speculation as to the intent of the parties because the intent is revealed without question by the words used."). The Settlement Agreement's broad language unequivocally releases any and all causes of action associated with Broadway Ford's Building and Business Personal Property claims, including its claim for vexatious refusal.[4]

*Vexatious Refusal – Business Income and Extra Expense*

This Court will deny summary judgment on Count II of the complaint to the extent Broadway Ford seeks damages for vexatious refusal as to the Business Income and Extra Expense claims. As discussed above, the clear purpose of the Settlement Agreement is to resolve the Building and Business Personal Property issues while "claims for Business Income and Extra Expense [ ] are not included or made a part of this [Settlement] Agreement and remain open." (Doc. 31-1 at § 2). Depositors unpersuasively argues that the vexatious refusal claim is an "entirely separate cause of action for additional damages" and, accordingly, "clearly not a claim for business income and extra expense." (Doc. 27 at 10). But the Settlement Agreement only releases "any and all claims . . . for damage to [Broadway Ford's] building and business personal property under the

---

[4] Though it is not necessary to this ruling, the Settlement Agreement's reference to claims of "bad faith" may also incorporate Broadway Ford's vexatious refusal claim as to the Building and Business Personal Property claims. *See Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67-69 (Mo. banc 2010) (comparing first-party vexatious refusal claims with third-party bad faith claims under Missouri law).

8

Building and Business Personal Property Coverage under the Policy." (Doc. 31-1 at § 2). The reference to the Building and Business Personal Property coverage unmistakably limits the scope of the otherwise general release. A claim for vexatious refusal as to the Business Income and Extra Expense clearly does not fall within the release.

IV.     **CONCLUSION**

The plain language of the Settlement Agreement unambiguously reflects the intention of the parties: any and all claims relating to the Building and Business Personal Property coverage, including those for vexatious refusal, are released. But all claims relating to Business Income and Extra Expense, including for vexatious refusal, are excluded. While vexatious refusal claims are separate causes of action under Missouri law, they are necessarily tied to an underlying claim in the insurance policy that the insurer has allegedly refused to pay without reasonable cause. This Court holds that the Settlement Agreement's carve-out for Broadway Ford's Business Income and Extra Expense claims from the otherwise general release *necessarily extends* to the claim for vexatious refusal as to this category. Put another way, this Court holds that the Settlement Agreement's release of "any and all claims . . . under the Building and Business Personal Property" (Doc. 31-1 at § 2) coverage *necessarily excludes* Broadway Ford's vexatious refusal claim as to the Business Income and Extra Expense coverage.

Accordingly,

**IT IS HEREBY ORDERED** that Depositors' Motion for Partial Summary Judgment (Doc. 26) is **GRANTED in part** and **DENIED in part.** Summary judgment is granted in favor of Depositors on Count II of Broadway Ford's complaint to the extent that Broadway Ford claims vexatious refusal as to the Building and Business Personal Property coverage. Summary judgment

9

is denied on Count II to the extent that Broadway Ford claims vexatious refusal as to the Business Income and Extra Expense coverage.

Dated this 28th day of July, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE